JOURNAL ENTRY AND OPINION
Defendant-appellant Charles Juliano ("defendant") appeals (1) the trial court's denial of his motion to suppress, (2) the trial court dismissing his affidavit and supplemental affidavit, (3) his conviction as it was based on perjured testimony and was against the manifest weight of the evidence.
Defendant was charged with attempted theft and possession of criminal tools. He pleaded not guilty and filed a pro se "motion to suppress evidence of auto search; and return of impounded vehicle." Defendant argued the police officers illegally seized evidence from his van because they illegally entered his vehicle without a search warrant and there was no nexus between the alleged crime committed and subsequent search of his vehicle. On February 26, 1998, the trial court held a suppression hearing.
At the suppression hearing, the manager of a local Builder's Square testified that on August 7, 1997, he observed defendant trying to cover up items in his shopping cart in one of the store aisles. The manager said defendant looked nervous. Because the store was about to close, the manager stated he approached defendant and informed him he needed to start leaving the store. The manager testified he observed a power washer or generator in defendant's cart. This aroused his suspicions so the manager walked to the front of the store and told his senior cashier to monitor the transaction involving defendant. Defendant entered the check-out line and took some of the smaller items out of his cart and laid them on top of the register. The cashier scanned the items. However, defendant did not remove the large box from his cart so the cashier leaned over and scanned the top of the box in the cart. The amount totaled approximately twenty to thirty dollars and defendant was about to tender payment in that amount when the manager intervened.
The manager stated he stopped the transaction because he knew the amount totaled should have been three to four hundred dollars and not twenty to thirty. The manager inspected defendant's cart and found a cut-out of a top of a box from an item different than the generator which was in defendant's cart. According to the manager, the parameters of the cut-out perfectly fit the top of the generator box in the cart. Thus, when the cashier scanned the code on the false top, the price of the generator was much cheaper than its actual price. The manager called the police, who arrived at the store a short time later.
Officer Balluh testified next and stated he arrived at the store and after his partner spoke with the store manager, defendant was read his Miranda rights and questioned. Balluh said defendant denied having a vehicle and told them he was dropped off at the store by a friend of his named "Joe" who drove a van. After listening to defendant's story, Balluh said defendant was placed under arrest. Balluh testified they were pulling out of the store parking lot when they noticed a van parked all by itself. They conducted a computer check on the plates which revealed defendant owned the van. Defendant was asked by Balluh if he owned the van, but he refused to answer. Bulluh said he and his partner approached the van and noticed one of the doors was open. Balluh said his partner began an inventory search of the van but stopped because of inclement weather and had the van towed to the police station which is standard procedure. He said his partner, Officer Bigham finished the inventory search back at the station.
Officer Bigham testified he arrived at the Builder's Square and conferred with the manager who told him about defendant's attempted purchase. Bigham stated he approached defendant, read him his Miranda Rights and asked defendant what occurred. Bigham said defendant told him he had a generator in the cart and he placed a top over the generator. The officer said defendant stopped talking at this point. Bigham said once in the parking lot they noticed a van parked by itself and ran its plates which showed defendant owned the van. Bigham testified he approached the van, looked inside and saw on the console several codes, which are used by the stores for pricing goods. Bigham said he also saw straight edge razor blades. The inventory search of the van revealed: red utility pliers, black utility razors, cut-out pricing codes and scissors.
Approximately a month after the suppression hearing, the trial court issued a judgment entry denying defendant's motion to suppress. Defendant then entered a plea bargain with plaintiff-appellee Village of Oakwood where he pleaded guilty to the charge of attempted theft in exchange for a dismissal of the charge of possession of criminal tools. Defendant was sentenced to a term of incarceration of 90 days and ordered to pay a fine of $750 and court costs; however, the trial court suspended all but thirty days of the sentence and suspended $400 of the fine. In addition, defendant was placed on a year of inactive probation and ordered to pay a fine of $50 for contempt of court.
Defendant timely filed his notice of appeal and now submits four, pro se, assignments of error. In his first assignment of error defendant argues the trial court erred in overruling his motion to suppress. He claims any evidence seized by the police should have been suppressed because it was seized during an unconstitutional search of his car. He maintains the search was conducted without probable cause or a warrant. Therefore, any evidence seized during this search falls under the guise of the exclusionary rule and should have been suppressed.
On a review of a trial court's determination on a motion to suppress, an appellate court is bound to accept the trial court's findings of fact and determinations regarding credibility if they are supported by competent, credible evidence; after accepting these facts as true, the appellate court must then independently determine, as matter of law, without deference to the trial court's conclusion, whether they the meet appropriate legal standard. State v. Wemer (1996), 112 Ohio App.3d 100.
The issue is whether the evidence seized from defendant's van was illegally seized. Inventory searches of automobiles have consistently been upheld by the United States Supreme Court as permissible warrantless searches in cases where vehicles are impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the contents." S. Dakota v.Opperman (1976), 428 U.S. 364, 373. The Ohio Supreme Court has also upheld the standard inventory search of a lawfully impounded vehicle "when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of an impounded vehicle." State v. Robinson (1979), 58 Ohio St.2d 478,480. The inventory exception to the warrant requirement exists in order to promote the public policies of (1) protecting an owner's property while it is in police custody, (2) insuring against a claim of lost, stolen or vandalized property, and (3) guarding police from danger. Florida v. Wells (1990), 495 U.S. 1,4.
In the present case, defendant was arrested at the store and he informed the police he was dropped off by a friend in a van. Since the store was closing and all the customers had left the officers proceeded into the parking lot and saw a van parked by itself. They ran a computer check of the plates which revealed defendant owned the van. The officers, pursuant to police department procedure, impounded the van. Officer Ballah explained "* * * it's policy of the Oakwood Police Department that they make an arrest and there's a vehicle to tow the vehicle for safekeeping." Officer Bigham reiterated this point when he stated "[T]he van was registered to him. It was on private property. It's our responsibility. It was our policy that we remove the vehicle and recover that vehicle."
Defendant was arrested. The police discovered his van was parked on private property and for safety reasons, they had the van impounded and towed. Pursuant to this departmental policy, Officer Bigham conducted an inventory search which resulted in the discovery of alleged criminal tools. Based on the testimony of the two officers, we find the inventory search was conducted for safety and security reasons and was not merely a pretext for an evidentiary search. Accordingly, the trial court order denying defendant's motion to suppress was supported by competent, credible evidence. Defendant's first assignment of error is overruled.
Defendant's final three assignments of error complain: (1) the trial court erred in dismissing his affidavit and supplemental affidavit, (2) his conviction is based on the perjured testimony of one of the officers, and (3) the state failed to show any theft offense was committed. While defendant submits these three assignments, he does make any substantive arguments in support of the arguments and does not present any evidence. Accordingly, we will not address these three assignments of error. See App.R. 12(A)(2).
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., KENNETH A. ROCCO, J. CONCUR.
 _________________ JOHN T. PATTON PRESIDING JUDGE