JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Ulysses Davis, brings this appeal challenging the trial court's denial of his motion to suppress and its acceptance of his no contest plea. After a thorough review of the record, and for the reasons set forth below, we affirm in part, reverse in part, and remand to the trial court.
 {¶ 2} This case comes before us on a consolidated appeal. Appeal No. 90982 is a direct appeal from CR-496030;[1] Appeal No. 91028 is a direct appeal from CR-494861.
 {¶ 3} On April 12, 2007, a Cuyahoga County Grand Jury indicted appellant in CR-494861 on one count of drug trafficking in violation of R.C. 2925.03; one count of possession of drugs in violation of R.C. 2925.11; four counts of criminal simulation in violation of R.C. 2913.32; and four counts of trademark counterfeiting in violation of R.C. 2913.34.
 {¶ 4} On August 7, 2007, appellant filed a motion to suppress the evidence that had been seized by the arresting officers on March 17, 2007. On October 15, 2007, the trial court held a suppression hearing. The prosecution presented testimony from Officer Jeffrey Weaver. Officer Weaver testified that on March 17, 2007, he and his partner, Officer Nathan Gobel, witnessed appellant make a left turn from Corlett Road onto Martin Luther King Drive without using a turn signal. Officer Weaver activated his lights and conducted a routine traffic *Page 4 
stop. He testified that appellant produced proof of insurance, but was unable at that time to produce a driver's license. He also testified that appellant seemed nervous and that his hands were shaking.
 {¶ 5} Officer Weaver instructed appellant to step out of the vehicle, at which time he noticed the odor of fresh marijuana. Officer Weaver testified that he had appellant place his hands on top of the vehicle, and he began to check appellant's waistband for possible weapons. Appellant suddenly "lunged" his left hand into his pants pocket, which made Officer Weaver fear for his own safety. He testified that he ordered appellant to remove his hand from his pocket and return it to the top of the car. Appellant produced his driver's license from his pocket.
 {¶ 6} Officer Weaver testified that he then continued his pat-down of appellant's pants because he "was still very uneasy with the fact that [appellant] was readily reaching for that pocket, prior to giving him my back I wanted to clear where he had reached for weapons." Officer Weaver then testified that he patted down appellant's pockets and felt two hard objects in one of the pockets, one which was "squishy or crunchy" and another that was "hard and bumpy." He testified that in his experience of having patted down thousands of individuals, it was absolutely apparent that appellant had drugs in his pocket. Officer Weaver testified that he removed one baggie of suspected marijuana and one baggie of suspected crack cocaine from appellant's pocket. *Page 5 
 {¶ 7} Officer Weaver then testified that he read appellant his rights, handcuffed him, and conducted an inventory search of the car before it was towed. In the trunk, Officer Weaver found three crates filled with CDs and DVDs.
 {¶ 8} On October 16, 2007, the trial court denied appellant's motion to suppress. Defense counsel indicated to the court that appellant wanted to withdraw his earlier plea of not guilty and enter a plea of no contest.
 {¶ 9} At the plea hearing, the trial court accepted appellant's plea of no contest, but at no time did the court address appellant personally. The transcript demonstrates that appellant never spoke on the record at all. Further, the trial court did not explain the ramifications of postrelease control, particularly that appellant would be subject to incarceration for up to one-half the term of his sentence if he violated the terms of postrelease control. The court sentenced appellant to a total of six years in prison on all counts in CR-494861.
 Review and Analysis {¶ 10} Appellant filed a timely appeal and raises three assignments of error for our review.
 Motion to Suppress {¶ 11} "I. The trial court erred in overruling the motion to suppress because the officer conducted an illegal search by removing items from defendant's pockets before he was arrested." *Page 6 
 {¶ 12} In his first assignment of error, appellant argues that Officer Weaver conducted an impermissible search of his pockets and, incidentally, of the trunk of his vehicle. He specifically argues that the police may not make a warrantless seizure of an object felt during a pat-down unless the object can be immediately identified as contraband. We do not find appellant's argument persuasive.
 {¶ 13} When considering a trial court's denial of a motion to suppress, this court's standard of review is divided into two parts. InState v. Lloyd (1998), 126 Ohio App.3d 95, 709 N.E.2d 913, the court stated: "Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See State v. Winand (1996), 116 Ohio App.3d 286, 688 N.E.2d 9, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 645 N.E.2d 802. *** This is the appropriate standard because `in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' State v. Hopfer (1996),112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard."
 {¶ 14} The Fourth Amendment to the United States Constitution provides for "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It is well-settled under *Page 7 
federal and state law that administrative inventory searches performed according to established procedures are not unreasonable. South Dakotav. Opperman (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000.
 {¶ 15} The United States Supreme Court "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." Id. Therefore, "a routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile." State v. Robinson (1979), 58 Ohio St.2d 478, 480,391 N.E.2d 317.
 {¶ 16} A search incident to an arrest is broader in scope than an inventory search. "The authority to search *** incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon *** the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under theFourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." New York v. Belton (1981),453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, quoting United States v.Robinson (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427. *Page 8 
 {¶ 17} "[W]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence ***." Id. Rather, a protective search — permitted without a warrant and on the basis of reasonable suspicion less than probable cause — must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Id.; see, also, Michigan v.Long (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201; Ybarra v.Illinois (1979), 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238.
 {¶ 18} "In Michigan v. Long, ***, the seizure of contraband other than weapons during a lawful Terry search was justified by reference to the Court's cases under the `plain-view' doctrine. That doctrine — which permits police to seize an object without a warrant if they are lawfully in a position to view it, if its incriminating character is immediately apparent, and if they have a lawful right of access to it — has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search. Thus, if an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that *Page 9 
already authorized by the officer's search for weapons. Cf., e.g.,Illinois v. Andreas [1983], 463 U.S. 765, 103 S.Ct. 3319. If the object is contraband, its warrantless seizure would be justified by the realization that resort to a neutral magistrate under such circumstances would be impracticable and would do little to promote theFourth Amendment's objectives. Cf., e.g., Arizona v. Hicks [1987],480 U.S. 321, 107 S.Ct. 1149." Minnesota v. Dickerson (1993), 508 U.S. 366,113 S.Ct. 2130, 124 L.Ed.2d 334, paragraph 1(a) of the syllabus.
 {¶ 19} In State v. Halczyszak (1986), 25 Ohio St.3d 301,496 N.E.2d 925, the Ohio Supreme Court held that "the `immediately apparent' requirement of the `plain view doctrine' is satisfied when police have probable cause to associate an object with criminal activity. In ascertaining the required probable cause to satisfy the `immediately apparent' requirement, police officers may rely on their specialized knowledge, training, and experience."
 {¶ 20} In this case, Officer Weaver testified at the suppression hearing that when he patted down appellant for weapons, he felt objects in appellant's pocket that his training and experience led him to believe with absolute certainty were marijuana and crack cocaine. The ensuing search of the trunk of appellant's car was permissible as a search incident to arrest and for the purposes of inventorying the contents of the vehicle prior to towing.
 {¶ 21} The trial court properly denied appellant's motion to suppress. Appellant's first assignment of error is overruled.
 Invalid Plea *Page 10 {¶ 22} "II. Defendant suffered from plain error as the no contest plea in CR-494861 violated Crim. R. 11(C)(2) because the trial court never personally addressed the Defendant before accepting defense counsel's plea."
 {¶ 23} "III. The plea in CR-494861 is void as a matter of law and plain error because the trial court failed to personally inform the defendant of the possibility of serving an additional half of his sentence for violating postrelease control."
 {¶ 24} In his second and third assignments of error, appellant argues that the trial court failed to address him personally during the plea hearing and that the trial court failed to properly inform him of the imposition of postrelease control. The state concedes both errors.
 {¶ 25} A review of the transcript indicates that the trial court accepted appellant's plea of no contest at the plea hearing, but at no time did the court address appellant personally, nor did appellant ever speak on the record. Further, the trial court did not explain the ramifications of postrelease control to appellant. Appellant's assignments of error II and III are sustained, and this case is remanded to the trial court for further proceedings.
 {¶ 26} This cause is affirmed in part as to the motion to suppress, reversed in part as to appellant's plea, and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
 The Court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and MARY JANE BOYLE, J., CONCUR.
[1] Appellant acknowledges in his brief that "after a review of [CR-]496030, counsel asserts that there are no issues for this Court to decide in [CR-]496030, therefore all further references with (sic) be directed towards [CR]-494861." *Page 1